# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DENNIS DANIEL STONE, et al.,** : | |
| Plaintiffs, : | |
| : | CIVIL ACTION |
| v. : | No. 19-2852 |
| : | |
| **JPMORGAN CHASE BANK, N.A.** : | |
| Defendant. : | |

**McHUGH, J.**                                                                                                 **November 27, 2019**

## MEMORANDUM

Plaintiff Dennis Stone brings this lawsuit to contest Defendant JPMorgan Chase's treatment of his mortgage debt. Plaintiff avers that Defendant, the holder of his mortgage, has refused to respect the conditions of his recent bankruptcy discharge by misallocating payments toward debt for which Plaintiff is no longer responsible. As a result, Plaintiff alleges, his mortgage loan has been wrongfully deemed delinquent, further resulting in the improper assessment of late fees.

In seeking a remedy for the alleged harms, Plaintiff brings claims under the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*; Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1 *et seq.*; Pennsylvania's Fair Credit Extension Uniformity Act (FCEUA), 73 P.S. § 2270.1 *et seq.*; and 11 U.S.C. § 524 of the bankruptcy code, which governs bankruptcy discharges.

Although the allegations raised in the Complaint are troubling, Plaintiff cannot satisfy the elements of the claims he seeks to assert under the FDCPA, UTPCPL, and FCEUA. Furthermore, as to Plaintiff's claim under 11 U.S.C. § 524, jurisdiction rests with the Bankruptcy Court. I am therefore compelled to grant Defendant's Motion to Dismiss.

I. **Relevant Background**

Plaintiff filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of Pennsylvania on June 3, 2013, and received his bankruptcy discharge on September 13, 2018. Compl. ¶ 11, ECF 1. At the time Plaintiff filed for bankruptcy, Defendant was both Plaintiff's mortgage servicer and noteholder. Compl. ¶ 12(a); Def. Ex. 1 to Mot. to Dismiss, ECF 12-3.[1] Defendant therefore filed a proof of claim in the bankruptcy proceeding. Compl. ¶ 12(a); Pl. Ex. A at 1, ECF 1. When the bankruptcy trustee issued a Notice of Final Cure Mortgage Payment on July 18, 2018, Defendant disputed the Notice's finding that Plaintiff was current on his post-petition mortgage payments. Compl. ¶ 18; Pl. Ex. E at 48, ECF 1. Plaintiff filed objections to Defendant's response, and Plaintiff's objections were then sustained by the Bankruptcy Court on October 30, 2018. Compl. ¶ 19; Pl. Ex. F at 135, ECF 1. Plaintiff contends that, notwithstanding the bankruptcy discharge and the Bankruptcy Court's sustaining his objections, Defendant continued to improperly impose fees against Plaintiff and wrongfully deposit his payments in a "suspense" account, not crediting his payments against the post-bankruptcy mortgage payments actually due. Compl. ¶ 24, ECF 1. Plaintiff's mortgage's servicing rights were later transferred from Defendant to Midland Mortgage Company on May 9, 2019.[2] Compl. ¶ 12(e), ECF 1.

---

[1] Defendant asks this Court to take judicial notice of the mortgage assignment record publicly filed with the Montgomery County Recorder of Deeds in 2012, included as Ex. 1 to their Motion to Dismiss. The document reflects that Chase was the mortgage holder as of December 24, 2012. The Court may take judicial notice of a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 201(b); *see also United States ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125, 139 (E.D. Pa. 2012) ("On a motion to dismiss, courts take judicial notice of documents which are matters of public record.") (citation omitted). I will take notice of the exhibit, and further note that Defendant's proof of claim in the bankruptcy proceeding listed Defendant as the creditor to the mortgage as well. Pl. Ex. A at 1, ECF 1.

[2] Midland was initially named as a co-defendant in this action, but Plaintiff dismissed Midland with prejudice on September 16, 2019. ECF 10.

## II. Standard of Review

Defendant's Motion to Dismiss is governed by the well-established standard set forth in Federal Rule of Civil Procedure 12(b)(6), as elaborated in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Defendant's Motion to Dismiss Plaintiff's claim under 11 U.S.C. § 524 is additionally governed by Federal Rule of Civil Procedure 12(b)(1), which speaks to courts' subject-matter jurisdiction. Motions to dismiss under Rule 12(b)(1) can be either facial or factual. Where, as here, the party bringing a 12(b)(1) motion attacks the complaint on its face and does not contest the facts alleged by the non-moving party, the 12(b)(1) motion is treated "like a 12(b)(6) motion" and the court must "consider the allegations of the complaint as true." *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016).

## III. Discussion

### A. Defendant is not a "debt collector" under the FDCPA

Defendant correctly asserts that it is beyond the reach of the FDCPA because it does not qualify as a "debt collector" under the statute. To successfully bring a claim under the FDCPA, "a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 265 (3d Cir. 2019) (citation omitted). The FDCPA provides two alternative definitions of a debt collector: (1) any person "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" (the "principal purpose" definition), or (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" (the "regularly collects" definition). *Id.* at 265; 15 U.S.C. § 1692a(6).

Defendant does not meet the criteria of either definition, particularly in light of the Supreme Court's recent decision in *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017), which modified the test for determining whether an entity meets the "regularly collects" definition.

### 1. "Principal Purpose" Definition

Under Third Circuit precedent, any "entity that has the 'collection of any debts' as its 'most important' 'aim' is a debt collector" under the "principal purpose" definition of the FDCPA. *Barbato*, 916 F.3d at 267 (quoting 15 U.S.C. § 1692a(6)). The *Barbato* Court found that the defendant, an entity whose business model was predicated on purchasing charged-off receivables—that is, accounts where consumers have ceased meeting their debt obligations—met the "principal purpose" definition of debt collector even though it assigned collection duties to a third-party. *Id*. at 268. In doing so, the Third Circuit contrasted the activities of the defendant there, which only had "one need for consumers: for them to pay their debts," with those of "a traditional creditor, such as a bank . . . for which debt collection is one of perhaps many parts of its business." *Id.* at 268-69. Defendant JPMorgan Chase, a multinational financial services firm, falls much closer to the category of "traditional creditor" described by *Barbato* than it does to an entity whose primary purpose is debt collection, and as a result it does not qualify as a debt collector under the principal purpose test.

### 2. "Regularly Collects" Definition

Nor does Defendant qualify as a debt collector under the "regularly collects" test. In *Henson*, the Supreme Court held that this definition is solely applicable to a person or entity who collects debt on behalf of "another." If "the target of the lawsuit regularly seeks to collect debts for its own account," the party does not fall under the "regularly collects" definition of the

4

FDCPA. *Henson*, 137 S. Ct. at 1721. In this case, the Defendant was the noteholder to Plaintiff's debt for the period at issue and was seeking to collect on its own behalf. Because Defendant collects on its own behalf, this definition of "debt collector" does not apply to Defendant.

Plaintiff attempts to circumvent *Henson* by relying on earlier Third Circuit precedent that applied a different test for determining whether a person was a debt collector under the "regularly collects" definition of the FDCPA. But the Third Circuit itself has acknowledged that *Henson* has rendered that test obsolete. Plaintiff invokes *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000), where the Court held that "an assignee may be deemed a 'debt collector' if the obligation is already in default when it is assigned." *Id.* at 403 (referring to the "default" test for determining whether an entity is a debt collector under the "regularly collects" definition). Plaintiff requests that I apply the *Pollice* "default" test here to find that Defendant is a debt collector, because his mortgage was in default at the time it was assigned to Defendant. Unfortunately for Plaintiff, the Third Circuit has been clear that *Henson* displaced the "default" test. *Tepper v. Amos Financial, LLC*, 898 F.3d 364, 367 (3d Cir. 2018) ("*Henson* . . . has recently repealed the 'default' test we followed"); *Barbato*, 916 F.3d at 265 (the *Henson* Court "rejected the petitioners' arguments that either the origin of the debt or the default status of the debt had any bearing on [the] analysis" under the "regularly collects" definition). As a result, Defendant does not meet the "regularly collects" definition of a debt collector, and Plaintiff's FDCPA claims must fail.

## B. Plaintiff's claims under Pennsylvania's UTPCPL and FCEUA fail

*1. Despite demonstrating ascertainable loss, Plaintiff cannot show "justifiable reliance" as required under the UTPCPL*

Plaintiff cannot state a claim under Pennsylvania's UTPCPL because he cannot show justifiable reliance upon the Defendant's alleged wrongful behavior. In order to sustain a cause of action under the UTPCPL, Plaintiff must "demonstrate (1) ascertainable loss of money or property, real or personal, (2) as the result of the defendant's prohibited conduct under the statute." *Kaymark v. Bank of America, N.A.*, 783 F.3d 168, 180 (3d Cir. 2015) (citations and quotations omitted). Furthermore, the Third Circuit requires that a consumer bringing a claim under the UTPCPL "prove justifiable reliance" upon the defendant's wrongful conduct. *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008).[3]

Turning to the first required element, by any common-sense assessment of Plaintiff's situation as pleaded, he has suffered an ascertainable loss. Defendant is purportedly accepting Plaintiff's payments while refusing to apply them correctly toward his mortgage account, using the money instead to cover fees he alleges he does not owe. Defendant allegedly continued to engage in such behavior despite multiple attempts at clarification from Plaintiff, in blatant

---

[3] Since the Third Circuit's decision in *Hunt*, the Pennsylvania Supreme Court reserved judgment as to whether a plaintiff alleging deceptive conduct under the UTPCPL needs to prove justifiable reliance. *See Grimes v. Enterprise Leasing Co. of Philadelphia, LLC*, 105 A.3d 1188, 1192 n.3 (Pa. 2014) ("Although we also granted review to consider whether a private plaintiff who alleges deceptive conduct under the UTPCPL's 'catchall' provision need not plead or prove justifiable reliance, we will not address that question because the 'ascertainable loss' issue is dispositive."). The weight of Pennsylvania appellate authority before and since *Grimes*, however, recognizes a plaintiff's obligation to prove justifiable reliance. *See Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004) ("To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance.") (citations omitted); *Kern v. Lehigh Valley Hospital, Inc.*, 108 A.3d 1281, 1289-90 (Pa. Super. Ct. 2015) ("[J]ustifiable reliance is an element of private actions under Section 201-9.2 of the UTPCPL. As such, [the a]ppellant had to demonstrate that he . . . justifiably relied on [the a]ppellee's alleged violations of the UTPCPL and, as a result of those alleged violations, suffered an ascertainable loss."); *Krishnan v. Cutler Group, Inc.*, 171 A.3d 856, 886 (Pa. Super. Ct. 2017) ("We recognize that a plaintiff must show, *inter alia*, justifiable reliance on the defendant's wrongful conduct to bring a private cause of action under the UTPCPL.").

violation of the Bankruptcy Court's discharge conditions. In addition to placing Plaintiff directly in a worse financial position by refusing to credit his payments properly, Defendant is placing obstacles in Plaintiff's path toward rebuilding his credit post-bankruptcy by categorizing his account as being in arrears.

Nonetheless, Plaintiff has not shown that he justifiably relied upon Defendant's behavior to his detriment. The Pennsylvania Supreme Court has held that a plaintiff cannot assert justifiable reliance based upon "an allegedly fraudulent misrepresentation if he knows it to be false." *Toy v. Metropolitan Life Insurance Co.*, 928 A.2d 186, 207 (Pa. 2007). Plaintiff submitted what he believed to be his correct mortgage payment to Defendant on a monthly basis, consistently disputing Defendant's contention that he was behind on his mortgage and owed additional fees. Compl. ¶¶ 20-24. As a result, it cannot be said that Plaintiff has "relied" upon the Defendant's purported misrepresentations or deceptive acts in any meaningful sense. In a somewhat ironic outcome, Plaintiff's knowledge of Defendant's allegedly wrongful behavior, which he seeks to challenge, bars him from bringing a claim against Defendant under the UTPCPL.[4]

2. *Purchase money mortgages are exempt from FCEUA's coverage*

Pennsylvania's FCEUA is a state-law analogue to the FDCPA, and a violation of the FDCPA is also a violation of the FCEUA. 73 P.S. § 2270.4(a). As discussed above, Defendant has not committed an FDCPA violation because Defendant is not a debt collector as statutorily

---

[4] The reason such a requirement survives has its roots in how courts have interpreted the statute as it has evolved. In 1996, the Pennsylvania legislature amended the catch-all provision of the UTPCPL to target "deceptive" behavior in addition to fraudulent behavior. When it did so, however, it did not modify the provision concerning private-plaintiff standing. This led the Third Circuit to conclude in *Hunt* that justifiable reliance remains an element that a private litigant must establish. 538 F.3d at 221. As noted above, the Pennsylvania Superior Court has endorsed that view, and the Pennsylvania Supreme Court has reserved judgement on the issue.

7

defined, so a state law FCEUA claim predicated upon Defendant's liability under the FDCPA cannot succeed.

In addition to tracking the FDCPA's treatment of debt collectors, the FCEUA also imposes liability upon unfair or deceptive debt collection acts by creditors. 73 P.S. § 2270.4(b). Plaintiff cannot bring a claim under 73 P.S. § 2270.4(b) either, however, for the reason that purchase money mortgages are excluded from the FCEUA, which defines "debt" as:

> An actual or alleged past due obligation, claim, demand, note or other similar liability of a consumer to pay money, arising out of a single account as a result of a purchase, lease or loan of goods, services or real or personal property for personal, family or household purposes or as a result of a loan of money or extension of credit which is obtained primarily for personal, family or household purposes, **provided, however, that money which is owed or alleged to be owed as a result of a loan secured by a purchase money mortgage on real estate shall not be included within the definition of debt.**

73 P.S. § 2270.3 (emphasis added).

A purchase money mortgage is, among other things, "taken by a mortgagee other than the seller to secure the repayment of money actually advanced by such person to or on behalf of the mortgagor at the time the mortgagor acquires title to the property and used by the mortgagor at that time to pay all or part of the purchase price." *Glover v. Urden*, 2010 WL 5829248, at *6 (W.D. Pa. Oct. 21, 2010) (quoting 42 P.S. § 8141(1)(ii)). Plaintiff's mortgage would appear to meet this definition, and Plaintiff has not otherwise responded to Defendant's argument that the mortgage debt falls within the FCEUA's exemption as listed in 73 P.S. § 2270.3. As a result, Plaintiff's claims under the FCEUA fail.

### C. No private cause of action exists under 11 U.S.C. § 524 or 11 U.S.C. § 105(a)

Finally, Plaintiff's attempt to bring claims under 11 U.S.C. § 524 must fail for lack of subject-matter jurisdiction. Plaintiff acknowledges that § 524 does not provide a private cause of action on its own, but argues that I have the authority to address violations of § 524 through 11 U.S.C. § 105(a). The Third Circuit foreclosed this approach in *In re Joubert*, 411 F.3d 452 (3d Cir. 2005). It noted that "the weight of circuit authority" held that § 524 does not imply a private right of action, "either alone or through § 105(a)," and it explicitly endorsed the reasoning of prior decisions from other circuits. *Id.* at 456; *see also Thomas v. City of Philadelphia*, 759 F. App'x 110, 111-12 (3d Cir. 2019) ("While § 105(a) is both a powerful and versatile tool, it operates solely within the context of bankruptcy proceedings" and thus "[a]ny sanction for violating the § 524 injunction must be imposed by the bankruptcy court."). If Plaintiff seeks a remedy for Defendant's alleged violation of § 524, he must pursue a contempt action in bankruptcy court.

## IV. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss will be granted. An appropriate order follows.

                                                 /s/ Gerald Austin McHugh
                                                 United States District Judge